IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| JOHNATHAN MUDGE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:23-cv-159-BR |
| | § | |
| RIVERSIDE TRANSPORTATION, INC., | § | |
| RIVERSIDE TRANSPORT, INC., *and* | § | |
| RENA TALTON, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER PARTIALLY GRANTING AND PARTIALLY DENYING DEFENDANT RIVERSIDE TRANSPORT, INC.'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant Riverside Transport, Inc.'s December 20, 2024 No-Evidence Motion for Summary Judgment. (ECF 63). The Movant urges the Court to issue summary judgment dismissing all claims asserted against it in Plaintiff's Original Petition, Jury Demand, and Request for Mandatory Initial Disclosures. (*Id.* at 6; *see* ECF 1-3 at 9–10). The primary grounds for the Motion is Movant's argument that it was not the employer of a driver co-defendant at the time of a motor vehicle collision. (ECF 63 at 4–5). Having considered the parties' filings and the applicable law, the Court finds the Motion should be GRANTED as to Plaintiff's claim for negligent entrustment and DENIED as to all other claims.

## I.   BACKGROUND

The facts of the events giving rise to this lawsuit centers are generally undisputed. On October 5, 2021, in the city of Vega, Texas, Plaintiff was in the sleeper berth of a parked tractor-trailer. (ECF 49 at 2, ¶9 (Defendants' First Amended Original Answer to Plaintiff's Original Petition)). Defendant Rena Talton, who was driving a tractor-trailer through the parking lot, struck the vehicle in which Plaintiff was located. (*Id.*).

Prior to this accident, Talton had held her commercial driver license ("CDL") for approximately a year. (ECF 106 at 191). Other than the one at issue in this lawsuit, Talton has never been involved in a motor vehicle collision. (*Id.* at 207). She has received traffic citations for speed and seat belt violations, and she was once put out of service by the Department of Transportation for driving without having her CDL on her person. (*Id.* at 207–08).

The truck Talton was driving was marked with the logo and USDOT number for Defendant Riverside Transportation, Inc. ("RS Transportation").[1] (ECF 106 at 137). Defendants have stipulated that Talton was an employee acting within the course and scope of her employment with RS Transportation at the time of the accident, that RS Transportation and Talton acted negligently in connection with the accident, and that their negligence was a proximate cause of the collision. (ECF 111). The parties dispute the extent of damages and injuries that resulted from the collision.

The instant Motion turns heavily on the relationships between the Defendants. As further detailed *infra*, Section II, "Subject Matter Jurisdiction," RS Transportation and the Movant (together, the "Corporate Defendants") are distinct corporations, organized under the laws of different states and having their headquarters in different states. According to the corporate disclosure they jointly filed in connection with this litigation, neither of them has a parent company. (ECF 117 at 1). Each has a distinct USDOT number associated with the different states in which they are headquartered. (ECF 106 at 11–12; *accord* ECF 109-2 at 7–8).

Defendants produced an insurance policy under Rule 26(a)(1)(A)(iv) showing Movant as the primary named insured, but listing RS Transportation in the attached schedule as an additional named insured. (ECF 106 at 157–67, *and* ECF 109-2 at 17). Plaintiff has also submitted multiple

---

[1] Because Defendant Riverside Transportation, Inc. and Defendant Riverside Transport, Inc. have similar names, the undersigned refers to Defendant Riverside Transportation, Inc. as "RS Transportation" and refers to Defendant Riverside Transport, Inc. as "Movant."

documents created by third parties, such as background check reports for Talton at the time she was hired, and invoices for repair and maintenance service on the truck or trailer she was driving at the time of the accident, that show Movant as the customer. (ECF 106 at 139 *and id.* at 169–78).

First-party documents from the Corporate Defendants also indicate some admixture between the two companies. Emails in a chain discussing paperwork processes associated with the loads driven by Talton are marked with email signatures for three different individuals that identify them each as working for Movant. (*Id.* at 143–55). The Court notes that these email signatures also included multiple links that refer to Movant, including to a Facebook page, a YouTube channel, a company website, and a Microsoft account for a Human Resources group. (*Id.* at 143–44). Separately, Plaintiff submitted Talton's trip list covering the period in which the accident occurred, which features Movant's name at the top of the page. (*Id.* at 141).

One individual, Laura Wolfe, testified as the representative for both Corporate Defendants pursuant to Federal Rule of Civil Procedure 30(b)(6). (ECF 106 at 5 (deposition title page as included at Exhibit A of Plaintiff's Appendix); *accord* ECF 109-2 at 3 (the same page as included at Exhibit A of Movant's Appendix)).[2] Wolfe identified herself as an employee of a third party, Road Team Staffing, who was then leased to RS Transportation to serve as its vice president of risk management. (ECF 106 at 9–11; *accord* ECF 109-2 at 6–7).[3] When asked her affiliation with Movant, Wolfe answered that she was a "representative." (ECF 106 at 11; *accord* ECF 109-2 at

---

[2] Most pages in each party's appendices are marked with multiple different, mutually inconsistent systems of page numbering. For example, each page from the transcript of Ms. Wolfe's deposition appears in Plaintiff's Appendix with original page numbers of the transcript in the upper right corner, and page numbers indicating the position in Plaintiff's appendix in the lower right corner. When the Court cites to the record, it is not to any of these internal numbering systems, but is instead to page numbers that the Court's electronic case filing system ("ECF") assigns to every document filed with the Court. Whenever a document is accessed as part of the record in a case, ECF page numbers appear in blue, half an inch below the top margin of the document.

[3] Talton, similarly, was directly employed by a third party, Riverside Staffing, Inc., and then leased to RS Transportation to work as a driver; her pay stubs reflect Riverside Staffing as the issuing entity. (ECF 106 at 20–21; *accord* ECF 109-2 at 12).

7); *see* FED. R. CIV. P. 30(b)(6) (allowing a corporate deponent to "designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf[.]").

According to Wolfe, Movant secures freight for RS Transportation: "So they go get the freight with the customers, they sign contracts with the customers, and then that freight is essentially transferred to [RS Transportation] to run." (ECF 106 at 129). Wolfe testified the phrase, "RTI Family" is used in a company handbook to refer to "Drivers and people who are employed by or leased to [RS Transportation,]" and when asked if "it at all encompass[es Movant,]" she responded, "It could." (*Id.* at 19–20; *accord* ECF 109-2 at 10). The companies use an identical logo featuring the letters "RTI," except the word "Transport" appears in Movant's logo where "Transportation" appears in RS Transportation's logo. (ECF 106 at 20; *accord* ECF 109-2 at 10).

Plaintiff initiated this personal injury lawsuit in Texas state court, asserting claims against Talton for negligence, and against the Corporate Defendants for direct negligence, as well as for vicarious liability for Talton's negligence under a theory of respondeat superior. (ECF 1-3 at 7–11). Plaintiff also originally asserted gross negligence claims against the Corporate Defendants but has since voluntarily dismissed those. (*See id.* at 9–10; *see also* ECF 116). Defendants[4] removed the case to this Court on October 6, 2023. (ECF 1).

Both Corporate Defendants moved for summary judgment. (ECF 63 *and* 65; *see also* ECF 54 at 4–5 (First Amended Scheduling Order)). RS Transportation later withdrew its request for summary judgment in connection with its own and Talton's stipulations, and with Plaintiff's voluntary dismissal of gross negligence claims. (ECF 111; *see* ECF 112 (Order Withdrawing Motion)). The instant Motion challenges Plaintiff's claims of direct and vicarious liability against

---

[4] Though the Notice of Removal was filed in Talton's name, the Defendants have all been represented by the same counsel for the entire duration of this litigation. (ECF 1 at 1, 4).

the Movant only. (ECF 63 at 4–6). The primary issue disputed in the instant Motion is whether the Movant employed Talton. (ECF 63 at 4–5).

## II.  SUBJECT MATTER JURISDICTION

As a threshold matter, the Court's authority to adjudicate this case is from 28 U.S.C. § 1332, and is conditioned on the diverse citizenship of the parties and on the sufficiency of the amount in controversy. The Fifth Circuit has clarified that, when a case is at the summary judgment stage, the record must contain competent evidence sufficient to support a factual finding[5] as to subject matter jurisdiction. *See Megalomedia Inc. v. Phila. Indem. Ins. Co.*, 115 F.4th 657, 659 (5th Cir. 2024). To ensure this standard was met, the Court ordered supplemental briefs and evidentiary exhibits to be filed by Plaintiff, (ECF 88), and Defendants, (ECF 87).

The parties are agreed that the requirements of diversity of citizenship and amount in controversy are met and permit the Court's exercise of subject matter jurisdiction. The fact that

---

[5] Showing that subject matter jurisdiction exists at the summary judgment stage involves a fact-intensive inquiry that courts have an independent duty to resolve. Thus, it differs from other issues at summary judgment, for which the task of a court is merely to determine if the material disputes between the parties are "genuine" and warrant trial. As the Supreme Court has articulated the general standard:

> [T]he issue of material fact . . . is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288–99 (1968); *accord Cole v. Carson*, 905 F.3d 334, 342 (5th Cir. 2018) (Regarding a denial of summary judgment, "we note that the district court did not weigh the evidence and resolve the factual disputes . . ., properly so. Rather it asked only whether a jury should 'resolve the parties' differing versions of the truth at trial.'") (footnotes omitted) (citing *Anderson*, 477 U.S. at 249).

Here, the parties advance the same version of the truth, at least as far as subject matter jurisdiction is concerned, and a factfinder will need to resolve the matter definitively at trial regardless of that agreement. *See Megalomedia*, 115 F.4th at 659. Before it can present the matter to such a factfinder, however, the Court must determine now, at the summary judgment stage, whether it has the subject matter jurisdiction to do so. If, after reviewing the summary judgment record, no reasonable factfinder could affirmatively find the parties diverse, the Court cannot proceed to the merits of the case. *Accord id.* at 660 (remanding a case for jurisdictional discovery when there was no evidence of one party's citizenship). If, however, a reasonable jury could find the parties diverse, the Court may adjudicate summary judgment on the merits, even if factual elements that will need to be proven at trial (e.g., whether a defendant is a citizen of Missouri or Oklahoma) are not wholly resolved by the summary judgment record.

the parties agree on the matter, however, is irrelevant. "The parties cannot stipulate to diversity jurisdiction, just as they cannot stipulate to any other form of subject matter jurisdiction." *Megalomedia*, 115 F.4th at 659 (citing *Ins. Corp. of Ir. V. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) ("The consent of the parties is irrelevant.")). Further, the Court has an independent duty to determine jurisdiction sua sponte. *MidCap Media Fin., L.L.C. v. Pathway Data Inc*, 929 F.3d 310, 313 (5th Cir. 2019) ("We have an independent obligation to assess our own jurisdiction before exercising the judicial power of the United States."); *see also* FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

For the controversy to be "between citizens of different states" under 28 U.S.C. § 1332(a)(1), "all persons on one side of the controversy must be citizens of different states than all persons on the other side." *MidCap*, 929 F.3d at 313. In this case, Plaintiff, a natural person, must be a citizen of different state from Talton and from each of the Corporate Defendants. A natural person's state of citizenship is that in which they both reside and intend to remain or keep their home. *Id.* A corporation, by contrast, "is a citizen of every State and foreign state by which it has been incorporated *and* of the State or foreign state where it has its principal place of business." *Id.* at 314 (quoting 28 U.S.C. § 1332(c)(1)) (emphasis added). Generally, diversity subject matter jurisdiction depends on the citizenship of the parties at the time the lawsuit was initiated. *See Grupo Dataflux v. Atlas Global Group, L.P*, 541 U.S. 567, 574–75 (2004).

A.   Plaintiff's Citizenship

At the time Plaintiff filed this lawsuit, he identified himself as "a resident of Richland County, South Carolina." (ECF 1-3 at 4). At his May 2, 2024 deposition, Plaintiff testified that he was still living in South Carolina and had lived there for seventeen years. (ECF 87-1 at 8). This is sufficient evidence for a reasonable factfinder to conclude that, at the time this lawsuit was filed,

Plaintiff both resided and intended to remain in the State of South Carolina. Accordingly, Plaintiff is a citizen of South Carolina for jurisdictional purposes.

### B. Talton's Citizenship

According to her February 13, 2025 affidavit, Talton lived in the State of Oklahoma both at the time of the affidavit and at the time of the 2021 motor vehicle accident. (*Id.* at 15). The undersigned notes, however, that at the time he initiated this lawsuit, Plaintiff designated an address in St. Louis, Missouri for service on Talton. (ECF 1-3 at 5). Talton confirmed residence in Missouri both in her Notice of Removal and in her Certificate of Interested Persons, filed October 6, 2023.[6] (ECF 1 at 2; ECF 2 at 1). Talton's affidavit confirms that Talton has, in the past, been domiciled in Missouri. (ECF 87-1 at 15). Thus, while the record does not conclusively establish Talton's state of citizenship at the time this action was filed, it does contain competent evidence sufficient for a reasonable factfinder to conclude that she is a citizen of either Missouri or of Oklahoma, and is diverse from Plaintiff.[7]

### C. RS Transportation's Citizenship

Defendants submitted the affidavit of Terry Wallace, identified as the President of RS Transportation. (*Id.* at 18). Wallace avers that RS Transportation is incorporated under the laws of the State of Indiana, and that it is headquartered and has its principal place of business in Indiana, where the majority of its executive and administrative functions are performed. (*Id.* at 18–19).

Though there is no direct evidence showing where RS Transportation was incorporated or had its principal place of business at the time Plaintiff filed this lawsuit, Wallace's Affidavit further

---

[6] Both the Federal Rules of Civil Procedure and the local Civil Rules of this Court require disclosure statements from most parties in the beginning stages of most civil suits to assist with screening for subject matter jurisdiction and conflicts of interest. FED. R. CIV. P. 7.1, *and* N.D. TEX. CIV. R. 3.1(c), 3.2(e), 7.4, 81.1(a)(4)(D), *and* 81.2.

[7] The Court notes that Defendant Talton's citizenship will need to be proven by a preponderance of evidence at trial. *Megalomedia*, 115 F.4th at 659.

states that it "has never been incorporated in the State of South Carolina and does not maintain a principal place of business or have its headquarters in the State of South Carolina." (*Id.* at 19). Moreover, the Notice of Removal in this case stated that RS Transportation was incorporated in Indiana and had its principal place of business in Indiana. (ECF 1 at 3). Similarly, Plaintiff's state-court pleading identified RS Transportation as an Indiana corporation. (ECF 1-3 at 5).

Thus, as with Defendant Talton, the record does not conclusively establish which states RS Transportation was a citizen of at the time this lawsuit was initiated, the way the parties will have to do at trial. However, it does contain sufficient evidence to support a reasonable jury finding that, at the time litigation began, RS Transportation was a citizen of Indiana only, and so does not destroy diversity.

D.     Movant's Citizenship

Defendants also filed the Affidavit of William Grojean, who is identified as the President of the Movant, Riverside Transport, Inc. (*Id.* at 21–22). Grojean avers that Movant is incorporated under the laws of the State of Delaware, and that it is headquartered and has its principal place of business in Kansas, where the majority of its executive and administrative functions are performed. (*Id.*). Grojean further testifies, in a statement identical to Wallace's for RS Transportation, that Movant has never been a South Carolina corporation and does not have a principal place of business or headquarters in South Carolina. (*Id.* at 22).

In Plaintiff's state-court pleading, Movant is identified as a Kansas corporation. (ECF 1-3 at 5). In their Notice of Removal, Defendants alleged that Movant was "organized under the laws of the State of Kansas with its principal place of business in Kansas City, Kansas." (ECF 1 at 2) Thus, as with the other Defendants, the record does not conclusively establish whether, at the time this lawsuit was filed, Movant was a citizen of Kansas only or of Kansas and Delaware. It does,

however, contain competent evidence sufficient to support a reasonable jury finding that Movant is diverse from Plaintiff.

### E.  Amount in Controversy

Plaintiff's state-court pleading called for damages to be determined by a jury, but stated that he sought "monetary relief of over $1,000,000.00." (ECF 1-3 at 12). At his deposition, Plaintiff testified that his lost wages exceed $200,000.00. (ECF 87-1 at 9). Plaintiff's third supplemental initial disclosures estimate past medical expenses of "approximately $176,328.68" with "future medical bills . . . undetermined at this time[,]" lost earnings of $284,998.74, and future lost earning capacity of $2,543,068.00. (*Id.* at 12–13; *see* ECF 78 (Plaintiff's January 17, 2025 Certificate of Service of his third supplemental disclosures)); *see also* FED. R. CIV. P. 26(a)(1)(A)(iii).

### F.  Conclusion as to Jurisdiction

There is competent evidence in the record sufficient to support reasonable jury findings that, at the time this lawsuit was removed to this Court, Plaintiff was a citizen of South Carolina, Talton was a citizen either of Oklahoma or Missouri, RS Transportation was a citizen of Indiana only, and Movant was a citizen either of Delaware and Kansas or of Kansas alone. Further, the amount in controversy, as determined from the pleadings and the summary judgment record, is well above the $75,000 threshold.

As a final note, the undersigned United States Magistrate Judge is presiding over this case by consent of the parties pursuant to 28 U.S.C. 636(c)(1) and Federal Rule of Civil Procedure 73(a). (*See* ECF 30). Thus, and because Plaintiff is of diverse citizenship from all Defendants, and the amount in controversy is above the statutory minimum, the undersigned has jurisdiction to issue this Order.

## III.   THE SUMMARY JUDGMENT STANDARD

A grant of summary judgment is only appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is non-genuine if no reasonable factfinder could return a verdict for one side, and is immaterial if its resolution does not affect the outcome of the action. *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003) *and Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

Movant styled its Motion, "Defendant Riverside Transport, Inc.'s No-Evidence Motion for Summary Judgment." (ECF 63 at 1). This title reflects the thrust of Movant's arguments, which is that summary judgment on Plaintiff's claims is appropriate due to a lack of supporting evidence. (*See id.* at 4–6). Plaintiff objects, however, that "a 'no-evidence' motion for summary judgment is not recognized by the Federal Rules of Civil Procedure, and [Movant] failed to support its summary judgment motion with citations to record evidence." (ECF 104 at 1).[8]

As Plaintiff correctly points out, the Texas Rules of Civil Procedure allow for a tool called a "No-Evidence Motion" to be used in Texas State Courts. TEX. R. CIV. P. 166a(i). The Federal Rules, by contrast, control all motions for summary judgment in Federal Courts, and they do not formally distinguish between motions that invoke overwhelming evidence and those that invoke an absence of evidence—both are governed by the same rule. *See generally* FED. R. CIV. P. 56.

However, the Federal Rules do allow a party moving for summary judgment to support its motion by showing "that an adverse party cannot produce admissible evidence to support" a

---

[8] The Motion was not accompanied by an appendix of evidence; when the Court refers to "Movant's Appendix" below, the reference is to the Appendix filed with Movant's reply brief. (*See* ECF 109-2). Movant's Appendix was filed without first obtaining leave of the Court as required by the local Civil Rules. *See* N.D. TEX. CIV. R. 56.7 (prohibiting any party from filing "supplemental pleadings, briefs, authorities, or evidence" without "the permission of the presiding judge."). However, Plaintiff has not objected to Movant's Appendix or sought leave to file a sur-reply. Thus, the Court has considered all evidence in the record as permitted by the applicable rules. FED. R. CIV. P. 56(c)(3).

material factual position. *Id.* at 56(c)(1)(B). Faced with such a motion, a responding party has the burden to produce admissible evidence showing that the factual issue is genuine—i.e., evidence that could permit a reasonable factfinder to rule in the responding party's favor. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017). When determining whether this burden has been carried, the Court must consider all materials furnished by the parties, and must view all evidence and draw all reasonable inferences in favor of the non-moving party. *Id.* at 328–29; *see also* FED. R. CIV. P. 56(c)(3).

## IV.   APPLICABLE LAW

Plaintiff asserted multiple theories in support of his direct negligence claims against the Corporate Defendants, including negligent hiring, supervision, retention, training, and entrustment. (ECF 1-3 at 9–10).[9] Plaintiff has also, as mentioned above, asserted a respondeat superior claim, which applies when an employee commits a tort while acting within the normal course and scope of their employment. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3D 754, 757 (Tex. 2007).[10]

As mentioned above, Movant challenges Plaintiff's claims primarily with the argument that Talton was employed by RS Transportation, but never by Movant. (ECF 63 at 4–5). If Talton was not employed by Movant, then Movant cannot be held vicariously liable for any torts she

---

[9] Plaintiff also asserted, in his original state court petition, that the Corporate Defendants violated various provisions of the Federal Motor Carrier Safety Regulations. (ECF 1-3 at 9). The parties have not addressed the regulations in their briefing, so this Order does not address them either. The Court does note the evidence that, unlike RS Transportation, Movant has not operated as a motor carrier for some time. (ECF 109-2 at 9).

[10] As a federal court sitting in diversity, the substantive law governing this case is determined by the choice of law rules of the forum state in which this Court sits. *E.g.*, *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 770 (5th Cir. 2016). Texas choice of law rules call for application of the law of the state with the "most significant relationship" to the case, which in tort cases depends on the place where the injury and the conduct causing it occurred, the places where the parties can be found, and the place where the relationship between the parties, if any, is centered. *Hughes Wood Prods. Inc. v. Wagner*, 18 S.W.3d 202, 205 (Tex. 2000); *see* Restatement (Second) of Conflict of Laws §§ 6, 145 (1971). Both parties have briefed this matter using Texas law, so the Court assumes without deciding that Texas law governs all issues raised by the instant motion.

committed, and cannot have been directly negligent in hiring, training, supervising, or retaining her.

With regard to negligent entrustment, Plaintiff's claim invokes the theory that the Corporate Defendants, as Talton's co-employers, entrusted her with the vehicle they hired her to drive. (ECF 105 at 13–14). Movant argues that, because it never employed Talton, it never entrusted her with a vehicle. (ECF 63 at 5). In the alternative, Movant argues Talton was not an unlicensed, incompetent, or reckless driver, and that even if she were, Movant did not know and had no reason to know she was. (*Id.*).

### A.     Plaintiff's Direct Negligence Claims

Texas appellate courts have long recognized negligent hiring, training, supervision, and retention as variants of negligence committed directly by an employer defendant. *See, e.g.*, *Dangerfield v. Ormsby*, 264 S.W.3d 904, 912-13 (Tex. App.—Fort Worth 2008, no pet.); *accord LaBella v. Charlie Thomas, Inc.*, 942 S.W.2d 127, 135–37 (Tex. App.—Amarillo 1997, writ denied), *and THI of Tex. at Lubbock I, LLC v. Perea*, 329 S.W.3d 548, 573 (Tex. App.—Amarillo 2010, pet. denied). As negligence claims, they require the existence of a duty, the breach of that duty by the defendant, an injury to the plaintiff proximately caused by that breach, and damages associated with that injury. *Dangerfield*, 264 S.W.3d at 912. For negligent hiring, the duty is to investigate or screen employees before hiring them. *Id.* For negligent supervision and retention, the duty is to supervise and terminate the employment of those whose employment is unsafe. *Id.* at 912-13. For negligent training, the duty is to provide reasonably prudent training. *Id.* at 912.

For many years, the Texas Supreme Court "ha[d] not ruled definitively on the existence, elements, and scope of such torts [as negligent retention and supervision] and related torts such as negligent training and hiring." *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 804 n.27

(Tex. 2010) (going on to note that the case did "not present an occasion to address these issues"). Recently, though that court still "ha[s] not recognized negligent training or supervision as an independent theory of tort liability[,]" it has addressed negligent hiring, and has characterized negligent training and supervision as "analogous" to negligent hiring. *Werner Enters., Inc. v. Blake*, --- S.W. 3d ---, 2024 WL 6043877, *11 (Tex. 2025).

The Texas Supreme Court, in turn, has analogized negligent hiring to negligent entrustment (a tort discussed more fully below), in that it "requires negligence by two separate parties: the employer's negligence in hiring the employee and the employee's subsequent negligent act or omission. Both negligent acts must proximately cause the injury." *Endeavor Energy Res., L.P. v. Cuevas*, 593 S.W.3d 307, 311 (Tex. 2019). It is this feature of negligent hiring that the Texas Supreme Court has explicitly extended to negligent training and supervision. *Werner Enters.*, 2024 WL 6043877 at *11 ("Assuming that claims for negligent training and supervision have independent viability apart from an employer's usual respondeat superior liability, such claims would be subject to the same requirement we have applied to negligent hiring claims.") (referring to *Endeavor Energy*, 593 S.W.3d at 311).

The Texas Supreme Court still has not explicitly addressed negligent retention, but like lower Texas appellate courts, it has included that claim with the others in lists of employer direct negligence claims. *Pagayon v. Exxon Mobil Corp.*, 536 S.W.3d 499 at 505–06 (Tex. 2017) (quoting *Waffle House*, 313 S.W.3d at 804 n.27). Ultimately, this recent jurisprudence has left intact the framework established by the lower appellate courts, while also clarifying that both the employer's negligence and the employee's acts or omissions must proximately cause the alleged injury. *Endeavor Energy*, 593 S.W.3d at 311; *and Werner Enters.*, 2024 WL 6043877 at *11; *accord JBS Carriers, Inc. v. Washington*, 564 S.W.3d 830, 842 (Tex. 2018).

B.  Plaintiff's Other Claims

Plaintiff has also asserted claims against the Corporate Defendants seeking to hold them liable for Talton's negligence under respondeat superior. Latin for "let the master respond," respondeat superior is a doctrine holding employers vicariously or indirectly liable for the wrongdoings of their employees in certain circumstances. To successfully assert a claim based on respondeat superior, a plaintiff must show that an employee committed a tort while acting within the normal course and scope of his employment. *Goodyear Tire*, 236 S.W.3d at 757. The purpose behind respondeat superior is public policy—that the employer for whose benefit the employee was acting should also bear the cost of damages resulting from the employee's actions. *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 540–42 (Tex. 2002).

Finally, Plaintiff's claim for negligent entrustment, by contrast with his other claims, does not require an employment relationship.[11] To recover for negligent entrustment requires showing that (1) the defendant entrusted a vehicle to another person, (2) that person was an unlicensed, incompetent, or reckless driver, (3) the defendant knew or should have known that about the person at the time of the entrustment, (4) the person was negligent on the occasion in question, and (5) that negligence proximately caused the plaintiff's injury. *4Front Engineered Sols., Inc. v. Rosales*, 505 S.W.3d 905, 909 (Tex. 2016).[12]

---

[11] Negligent entrustment is sometimes categorized as a theory of vicarious, rather than direct, liability, and courts are not wholly in agreement over which characterization is correct. *See Fuller v. Biggs*, 532 F.Supp.3d 371, 380-81 (N.D. Tex. 2021) (collecting cases); *see also F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 686 (Tex. 2007) (equating "the doctrine of vicarious liability" with respondeat superior and referring to negligent entrustment as "a form of vicarious liability"). The distinction between direct and vicarious liability is significant under Texas law for many reasons; for example, a defendant can generally be found vicariously liable only for another's ordinary negligence, not their gross negligence. *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921-22 (Tex. 1998). Another example is that a defendant found liable only by virtue of vicarious liability will not be separately included when apportioning responsibility. *See* TEX. CIV. PRAC. & REM. CODE § 33.003. Thus, if negligent entrustment is characterized as a form of vicarious liability, it will not support including a defendant when apportioning damages. *See F.F.P. Operating Partners*, 237 S.W.3d at 696–99 (Jefferson, C.J., dissenting) (collecting examples).

[12] Movant characterizes negligent entrustment as requiring that the defendant owned the entrusted vehicle. (ECF 64 at 10). A nonowner can also be liable for negligent entrustment, however, if they had a right of control over the entrusted vehicle. *Atl. Indus. v. Blair*, 457 S.W.3d 511, 517–18 (Tex. App.—El Paso 2014) (collecting cases), *rev'd on*

C.      Issues of Control and Multiple Employers

Common to all of Plaintiff's claims is the notion of "a right of control." If an employer had no right to control the actions of an employee or independent contractor, then those actions cannot have been in the course and scope of employment, and so cannot give rise to respondeat superior liability. *St. Joseph Hosp.*, 94 S.W.3d at 542. Similarly, if a defendant had no right to control a vehicle, it cannot be held liable for negligent entrustment of that vehicle to another. *In re Acad.*, 625 S.W.3d at 31.[13]

Finally, if a defendant had no right to control the hiring, training, supervision, and retention of an employee, then it cannot have had any duty to prevent those activities from causing damages to a third party, and so cannot be liable for negligence in them. *E.g.*, *Massage Heights Franchising, LLC v. Hagman*, 712 S.W.3d 615, 620–23 (Tex. 2025) (Holding that whether a franchisor could have been negligent in connection with a franchisee's hiring of an independent contractor turned on whether the franchisor "had specific control over the alleged defects that led to the plaintiff's injury: here, [the independent contractor's] hiring." (quoting *Exxon Corp. v. Tidwell*, 867 S.W.2d 19, 23 (Tex. 1993)) (internal punctuation omitted)).

At least for purposes of respondeat superior, a person can be employed by more than one employer at the same time. *White v. Liberty Eylau Sch. Dist.*, 880 S.W.2d 156, 159 (Tex. App.—Texarkana 1994, writ denied) ("A person may be the servant of two employers at one time as to one act if the service to one does not involve an abandonment of the service to the other.") (citing Restatement (Second) of Agency § 226 (1958)); *accord St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513,

---

*other grounds*, 482 S.W.3d 57 (Tex. 2016); *accord In re Acad., Ltd.*, 625 S.W.3d 19, 31 (Tex. 2021) ("[T]he basis for imposing liability on the owner of the thing entrusted to another is that ownership of the thing gives the right of control over its use.") (quoting *F.F.P. Operating Partners, LP v. Duenez*, 237 S.W.3d 680, 686 (Tex. 2007)).

[13] Full citation *supra* n.12. Under Texas law, a defendant can also be liable for negligent entrustment of chattels other than vehicles; *In re Acad.* involved claims of negligent entrustment of a firearm. 625 S.W.3d at 30–31.

538 (Tex. 2002) ("A person may be the employee of more than one employer."). If one of those employers has relinquished the right to control the employee, however, then it cannot be held liable for the employee's tortious acts, even while remaining the employee's employer in general. *St. Joseph Hosp.*, 94 S.W.3d at 537–38.

The parties have not indicated, and the Court is not aware of, any binding holding on the question of whether multiple corporate defendants can simultaneously be liable for negligent hiring, training, supervision, retention, or entrustment. As a question of law that would entitle Movant summary judgment on a legal defense, the burden to make such a showing was on the Movant. *See* FED. R. CIV. P. 56(a) ("The court shall grant summary judgment *if the movant shows* . . . the movant is entitled to judgment as a matter of law.") (emphasis added). Accordingly, the Court will assume without deciding that, under Texas law, multiple defendants can be simultaneously liable for negligent hiring, training, supervision, retention, and entrustment, provided they each otherwise satisfy the elements of those torts.[14]

## V.   ANALYSIS

Movant challenges Plaintiff's claims primarily on the basis that RS Transportation, not Movant, was Talton's employer at the time of the accident, and that Movant is a distinct entity with no involvement in Talton's employment or the incident at issue. (ECF 63 at 4–5; ECF 109 at 2). Alternatively, Movant argues that Talton was not an unlicensed, incompetent, or

---

[14] As with respondeat superior liability, it stands to reason that more than one employer will sometimes have a right of control in the hiring, training, supervision, retention, and entrustment of a given employee, and that more than one person or entity will sometimes have a right of control that is exercised by the entrustment of a vehicle. For example, in *Massage Heights*, the defendants accused of negligence in connection with the independent contractor's hiring included both the franchisor and the franchisee. 712 S.W.3d at 618–19. Negligent entrustment cases also regularly involve multiple defendants who share an interest in an entrusted vehicle. *E.g.*, *De Blanc v. Jensen*, 59 S.W.3d 373, 374 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (married couple sued for entrusting vehicle to their adult son), *and Morris v. JTM Materials, Inc.*, 78 S.W.3d 28, 52 (Tex. App.—Fort Worth 2002, no pet.) (equipment owner/lessor and lessee sued for entrustment to driver employed by lessee).

reckless driver, and that even if she were, Movant did not know and had no reason to know she was. (ECF 63 at 5).

From the evidence in the record, a reasonable jury could conclude that Movant was directly involved in hiring, training, supervising, and retaining Talton. The background checks solicited in connection with her hiring list Movant as the inquiring entity. (ECF 106 at 139). An otherwise unspecified company handbook, which a reasonable jury could infer would be used in training employees, refers to the "RTI Family," a term that could encompass both Corporate Defendants. (*Id.* at 19–20). Internal emails discussing the course of Talton's work activities were signed with Movant's name. (*Id.* at 143–55). Other than by denying status as her employer, Movant has not challenged the other elements of negligent hiring, training, retention, and supervision. Thus, Movant has not carried the burden for summary judgment on Plaintiff's direct negligence claims.

A reasonable jury could also conclude that Talton was acting as Movant's employee at the time of the accident. Her trip sheet shows Movant's logo. (*Id.* at 141). The record does not establish who brokered the load Talton was transporting at the time, but based on the trip sheet and the testimony that Movant functions to secure freight for RS Transportation, a reasonable jury could infer it was Movant. (*Id.*; *see also id.* at 129). Thus, Movant has not carried the burden for summary judgment on Plaintiff's respondeat superior claim.

Finally, a reasonable jury could conclude that the Corporate Defendants both exercised control over the vehicle Talton was driving at the time of the accident. Service and repair invoices for that vehicle show Movant as the soliciting entity. (*Id.* at 169–78). And as noted above, the trip sheet bearing Movant's logo could support a reasonable inference that Movant exercised some control over the trip. (*Id.* at 141). Thus, Movant's first argument against Plaintiff's negligent entrustment claim does not satisfy the summary judgment standard.

However, the Court agrees with Movant's alternative argument; the summary judgment record creates no genuine dispute as to two of the elements of negligent entrustment. As noted above, this claim requires Plaintiff to show that Talton was a reckless or incompetent driver, and that Movant knew or should have known that about her when it entrusted her with the vehicle. *See 4Front*, 505 S.W.3d at 909. To satisfy these elements, Plaintiff points to Talton's driving record and lack of job experience. (ECF 105 at 21). This evidence does not, however, raise a genuine question as to whether Movant should have known Talton was incompetent to operate a tractor trailer, or would do so recklessly.

*4Front* is instructive on this point. In that case, an electrician and his subcontractor were attempting to repair a lighted sign that hung about twenty feet off the ground on the exterior wall of a warehouse. 505 S.W.3d at 906–07. To reach the sign, the electrician stood in a basket attached to a stand-up forklift, which the subcontractor then raised. *Id.* At one point while working, the subcontractor drove the forklift off a curb, causing the lift to topple and injuring the electrician. *Id.* The electrician sued the subcontractor and the warehouse owner that had hired the men, alleging (among other things) a claim for negligent entrustment of the forklift. *Id.*

The Texas Supreme Court, when reviewing the negligent entrustment claim, clarified that an "incompetent or reckless" driver is different from a merely "negligent" driver. *Id.* at 909–10. There was "no evidence that [the subcontractor] had ever previously caused or even had any accidents when operating a forklift or any similar equipment, or that he had ever recklessly or even negligently operated such equipment." *Id.* The court compared the case to two others. First was *Goodyear Tire*,[15] in which prior citations for driving without liability insurance, speeding, and rear-ending a vehicle were not sufficient to sustain a claim for negligent entrustment. 236 S.W.3d at 758. Second was *Williams v. Steves Indus., Inc.*, in which the court noted the absence of "habit

---

[15] Full citation *supra*, Section IV, "Applicable Law."

evidence . . . offered to show that the driver was blatantly incompetent or reckless." 699 S.W.2d 570, 573–75 (Tex. 1985) (evaluating a gross negligence claim).

In this case, Talton's minor traffic tickets are not evidence that she was an incompetent or reckless driver, and neither is her lack of experience at the time she was hired. She had a CDL, and had only ever been put out of service due to failure to keep it on her person. (ECF 106 at 207–08). *See 4Front*, 505 S.W.3d at 911 ("Even the lack of a required legal license does not establish incompetence or recklessness."). Further, Plaintiff has not shown any evidence that Movant, by a reasonable inquiry, "would have discovered facts . . . that would have caused a reasonable employer to discover that [the driver] was incompetent or reckless." *Id.* at 910. Accordingly, because there is no genuine dispute as to whether Movant knew or should have known that Talton was a reckless or incompetent driver, Movant is entitled to summary judgment on Plaintiff's claim for negligent entrustment.

## VI.   CONCLUSION

Movant has shown that it is entitled to summary judgment on Plaintiff's claim for negligent entrustment, but not on any of Plaintiff's claims of direct negligence under the theories of negligent hiring, training, supervision, and retention, or on Plaintiff's claim for vicarious liability by respondeat superior. Accordingly, Defendant Riverside Transport, Inc.'s No-Evidence Motion for Summary Judgment (ECF 63) is PARTIALLY GRANTED and PARTIALLY DENIED. Plaintiff's claim against Movant for negligent entrustment is DISMISSED; Plaintiff's other claims will proceed.

IT IS SO ORDERED.

ENTERED July 14, 2025.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE